1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10                             WESTERN DIVISION

11

12   ANGELA BADURA,                    )     No. CV 04-8626 CW
                                       )
13               Plaintiff,            )     DECISION AND ORDER
             v.                        )
14                                     )
     JO ANNE B. BARNHART,              )
15   Commissioner, Social Security     )
     Administration,                   )
16                                     )
                 Defendant.            )
17   _____)

18

19       The parties have consented, under 28 U.S.C. § 636(c), to the

20   jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21   review of the Commissioner's denial of disability benefits.  As

22   discussed below, the court finds that the Commissioner's decision

23   should be reversed and this matter remanded for further proceedings.

24                        I.  <u>BACKGROUND</u>

25       Plaintiff Angela Badura was born on May 8, 1960, and was 41 years

26   old at the time of her administrative hearing. [Administrative Record,

27   "AR," 40, 42.]   She has a twelfth grade education (with special

28   education) and past relevant work experience as a private housekeeper,

                                    1

caretaker for the elderly, and fast food server/cook. [AR 105.]
Plaintiff alleges disability on the basis of migraine headaches,
stress and "hearing voices." [AR 32, 81.]

## II. **PROCEEDINGS IN THIS COURT**

Plaintiff's complaint was lodged on October 18, 2004, and filed
on October 22, 2004.  On April 14, 2005, defendant filed an answer to
the complaint and plaintiff's Administrative Record ("AR").  On August
8, 2005, the parties filed their Joint Stipulation ("JS") identifying
matters not in dispute, issues in dispute, the positions of the
parties, and the relief sought by each party.  This matter has been
taken under submission without oral argument.

## III. **PRIOR ADMINISTRATIVE PROCEEDINGS**

Plaintiff protectively filed an application for supplemental
security income ("SSI") on December 29, 1999, alleging disability
since August 1999.  [AR 80, 81.]  An administrative hearing was held
on April 25, 2002, before Administrative Law Judge ("ALJ") Earl J.
Waits. [Transcript, AR 40.]  Plaintiff appeared with counsel, and
testimony was taken from plaintiff and lay witness Wendy Anderson.
[AR 41.]  The ALJ denied benefits on August 2, 2002.  [Decision, AR
38.]  When the Appeals Council denied review on September 8, 2003, the
ALJ's decision became the Commissioner's final decision. [AR 5.]

## IV. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits.  The Commissioner's (or
ALJ's) findings and decision should be upheld if they are free of
legal error and supported by substantial evidence.  However, if the
court determines that a finding is based on legal error or is not
supported by substantial evidence in the record, the court may reject

2

1  the finding and set aside the decision to deny benefits.  See Aukland
2  v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.
3  Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240
4  F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,
5  1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
6  1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada
7  v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

8      "Substantial evidence is more than a scintilla, but less than a
9  preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence
10 which a reasonable person might accept as adequate to support a
11 conclusion."  Id.  To determine whether substantial evidence supports
12 a finding, a court must review the administrative record as a whole,
13 "weighing both the evidence that supports and the evidence that
14 detracts from the Commissioner's conclusion."  Id.  "If the evidence
15 can reasonably support either affirming or reversing," the reviewing
16 court "may not substitute its judgment" for that of the Commissioner.
17 Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

18                      **V.   DISCUSSION**

19     **A.   THE FIVE-STEP EVALUATION**

20     To be eligible for disability benefits a claimant must
21 demonstrate a medically determinable impairment which prevents the
22 claimant from engaging in substantial gainful activity and which is
23 expected to result in death or to last for a continuous period of at
24 least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at
25 721; 42 U.S.C. § 423(d)(1)(A).

26     Disability claims are evaluated using a five-step test:

27          Step one: Is the claimant engaging in substantial
           gainful activity?  If so, the claimant is found not
28         disabled.  If not, proceed to step two.

                              3

1
2
      Step two: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

3
4
      Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

5
6
      Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

7
8
      Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

9  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended

10  April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107

11  S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20

12  C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or

13  "not disabled" at any step, there is no need to complete further

14  steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

15      Claimants have the burden of proof at steps one through four,

16  subject to the presumption that Social Security hearings are non-

17  adversarial, and to the Commissioner's affirmative duty to assist

18  claimants in fully developing the record even if they are represented

19  by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at

20  1288.  If this burden is met, a prima facie case of disability is

21  made, and the burden shifts to the Commissioner (at step five) to

22  prove that, considering residual functional capacity ("RFC")[1], age,

23

24      [1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and

25  "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to

26  work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v.

27  Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a

28  nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler,

1  education, and work experience, a claimant can perform other work
2  which is available in significant numbers.  Tackett, 180 F.3d at 1098,
3  1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.
4       **B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**
5       Here, the ALJ found that plaintiff had not engaged in substantial
6  gainful activity since her alleged onset date (step one)[AR 32], that
7  plaintiff had "severe" impairments, namely psychotic disorder and
8  musculoligamentous fascitis (step two), and that plaintiff did not
9  have an impairment or combination of impairments that met or equaled a
10 "listing" (step three). [AR 35.]  Plaintiff was assessed an RFC
11 enabling her to perform work activity at the medium exertional level,
12 with no more than occasional work with the general public, due to
13 moderate limitations in plaintiff's ability to maintain social
14 functioning and to maintain concentration, persistence and pace. [AR
15 36.]  Based upon plaintiff's RFC, the ALJ found that she could perform
16 her past relevant work as a live-in housekeeper or food service
17 worker, as those jobs were described in the Dictionary of Occupational
18 Titles (step four).  Accordingly, plaintiff was found not "disabled"
19 as defined by the Social Security Act.
20      **C.   ISSUES IN DISPUTE**
21      The parties' Joint Stipulation identifies two disputed issues:
22      1.   Whether the ALJ fully developed the record; and
23      2.   Whether the ALJ properly determined that plaintiff was
24           capable of performing her past relevant work.
25      [JS 3.]
26
27  _____
28  765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

5

1        D.    ISSUE ONE: THE DEVELOPMENT OF THE RECORD

2        In February 2000, plaintiff underwent a psychiatric evaluation
3    performed by Dr. Barry Edelman. [AR 141-45.]  Plaintiff complained of
4    a chronic depressed mood about her migraine headaches and occasional
5    auditory hallucinations in the form of noises. [AR 141.]  It was noted
6    that plaintiff had never received psychiatric care other than being in
7    special education classes. [AR 142.]  Dr. Edelman conducted a mental
8    status examination and diagnosed plaintiff with a dysthymic disorder,
9    as manifested by plaintiff's history of chronic depressed mood, a
10   learning disorder, and a Global Assessment of Functioning Score
11   ("GAF") of 55.[2] [AR 144, 145.]  Dr. Edelman concluded that plaintiff
12   generally would not be functionally limited from a psychiatric
13   perspective, with the exception that she "would have difficulty
14   interacting with the public on a consistent basis secondary to her
15   sad, dejected affect." [AR 145.]

16       More than two years later, during the administrative hearing,
17   plaintiff's counsel informed the ALJ that "there's a GAF of 55 from a
18   psych [consultative exam in] February 2000.  We would request an
19   updated [consultative exam]." [AR 53.]  The ALJ responded, "Okay."
20   [Id.]  However, a second exam was never performed.  Plaintiff argues
21   that this constitutes a failure to develop the record and seeks
22   neuropsychological testing to further investigate plaintiff's
23   allegations of headaches. [JS 4.]  Plaintiff's point is well-taken.

24   _____

25       [2] A GAF score represents a clinical evaluation of an
     individual's overall level of functioning.  A GAF score of 51 to 60
26   signifies moderate symptoms (e.g., flat affect and circumstantial
     speech, occasional panic attacks) OR moderate difficulty in social,
27   occupational, or school functioning (e.g., few friends, conflicts with
     peers or co-workers). DSM-IV, American Psychiatric Association,
28   (Washington, 1994).

                                    6

1       An ALJ has broad latitude in ordering a consultative examination.
2 Reed v. Massanari, 270 F.3d 838, 842 (9ᵗʰ Cir. 2002)(citing Diaz v.
3 Sec'y of Health and Human Servs., 898 F.2d 744, 778 (10ᵗʰ Cir. 1990)).
4 If the ALJ determines that the record contains sufficient information
5 to resolve the issue of disability, an examination is not required.
6 Id.  Some types of cases, however, do normally require a consultative
7 examination, including those in which "additional evidence needed is
8 not contained in the records" and those involving an "ambiguity or
9 insufficiency in the evidence [that] must be resolved.  Id. (quoting
10 20 C.F.R. §§ 404.1519a(b)(1),(4); 416.919a(b)(1),(4)); see also
11 Hawkins v. Chater, 113 F.3d 1162, 1166 (10ᵗʰ Cir. 1997)(describing the
12 circumstances under which a consultative examination is required). In
13 addition, some types of cases may even require a second consultative
14 examination, when, for example, "[t]here is an indication of a change
15 in [the claimant's] condition that is likely to affect [her] ability
16 to work." Brown v. Barnhart, 236 F.Supp.2d 63, 67 (D.Me. 2002)(quoting
17 20 C.F.R. 416.919a(b)(5)).

18      Here, it appears that the ALJ simply made a mistake in failing to
19 follow through on his statement that he would order a second
20 consultative examination [AR 53] and, thus, remand would be
21 appropriate so that the mistake could be corrected.  However, even if
22 the ALJ had not promised to order a second examination, the
23 circumstances of this case would warrant such an examination.  More
24 than two years elapsed between Dr. Edelman's examination and the
25 administrative hearing. [AR 40, 141.]  During the two-year period,
26 there were indications of a "change in plaintiff's condition" that the
27 current record was "insufficient" to address.  In particular,
28 plaintiff reported an increase in auditory hallucinations that

involved human and animal voices, rather than just noises. [AR 52.]
Plaintiff also continued to report and was medically diagnosed with
migraine headaches [AR 172, 358, 372], which were known to exacerbate
her depression. [AR 141.]  In addition, plaintiff sought psychiatric
treatment, complaining of panic attacks [AR 396], and, for the first
time, was deemed eligible for mental health services based on a
preliminary diagnosis of anxiety disorder. [AR 400.]  Taken as a
whole, the evidence – the updated diagnoses, plaintiff's subjective
complaints, the request of plaintiff's counsel for an updated
examination, and the elapse of more than two years – was sufficient to
raise the possibility that plaintiff's psychiatric condition had
deteriorated so that the results of the initial examination could no
longer be considered reliable.  Accordingly, remand for the
performance of a second consultative examination would be appropriate.

**E.   ISSUE TWO: THE STEP FOUR FINDING**

The ALJ assessed plaintiff with an RFC enabling her to perform
work at the medium exertional level, with the notable exceptions that
plaintiff would be limited to only occasional work with the general
public, due to moderate limitations in her ability to maintain social
functioning and to maintain concentration, persistence and pace. [AR
36.]  Based on this RFC, the ALJ proceeded to determine whether
plaintiff could perform her past relevant work. [AR 37.]  The ALJ
noted plaintiff's testimony regarding her prior jobs, as well as the
job listings in the Dictionary of Occupational Titles ("DOT"). [Id.]
Because the DOT classifies the jobs of housekeeper and food service
worker as requiring a medium exertional level or less, the ALJ found
that plaintiff could return to either job. [Id.]  Based on this step
four finding, the ALJ found plaintiff "not disabled." [AR 38.]  The

8

1  court finds that the ALJ's step four determination was erroneous.

2      Although the claimant continues to bear the burden of proof at
3  step four in the sequential evaluation, the ALJ "still has a duty to
4  make requisite factual findings to support his conclusion [at step
5  four]."  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).
6  Specifically, the Social Security Rulings require the ALJ to make
7  three factual findings: a finding as to the individual's RFC; a
8  finding as to the physical and mental demands of the past
9  job/occupation; and a finding that the individual's RFC would permit a
10 return to his or her past job or occupation.  SSR 82-62, 1982 WL 31386
11 at *4.  Reliance on the DOT alone to discern the demands of an
12 individual's past work may be insufficient to make a step four finding
13 because a "generic occupational classification of the work is likely
14 to be fallacious and unsupportable."  Pinto, 249 F.3d at 846 (quoting
15 SSR 82-61, 1982 WL 31387 at *1).

16     Here, it is unclear that plaintiff's past jobs, as she actually
17 performed them, would tolerate her moderate impairments in social
18 functioning and concentration, persistence and pace.  Plaintiff's
19 testimony about her past work was brief and included no significant
20 descriptions of her past jobs duties [AR 43-44], and her written
21 descriptions in a "work history report" [AR 113-18] were similarly
22 cursory.  Cf. SSR 82-62, 1982 WL 31386 at *3 ("[F]or a claim involving
23 a mental/emotional impairment, care must be taken to obtain a precise
24 description of the particular job duties which are likely to produce
25 tension and anxiety, e.g., speed, precision,...working with other
26 people, etc.").  Furthermore, it is unclear that plaintiff's jobs, as
27 they are generally performed, could be done with plaintiff's
28 functional limitations.  The DOT listings for plaintiff's past

occupations, as they are generally performed, do not specify the level
of social functioning, concentration, persistence, and pace that would
be required for those jobs.  See DOT 319.677-014 (Food Service Worker,
Hospital), 311.472-010 (Fast-Foods Worker), 301.137-010 (Housekeeper,
Home).  A preliminary review of these job descriptions, however,
suggests that they could involve more than minimal contact with the
public: the job of fast food worker, for instance, seems to involve
primarily serving the general public.  It is well-settled, however,
that an ALJ cannot rely on descriptions in the DOT "that fail to
comport with [plaintiff's] noted limitations...[unless] the
ALJ...definitively explain[s] this deviation." Pinto, 249 F.3d at 847
(citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).
Here, because the ALJ did not acknowledge or provide an explanation
for the apparent deviation between the DOT job descriptions and
plaintiff's functional limitations, his reliance on the DOT to make a
step four finding was erroneous.  A new step four determination will
be necessary, including further development of the record for
information about plaintiff's past work demands that have a bearing on
her medically-established limitations.

     F.   REMAND FOR FURTHER PROCEEDINGS

     The decision whether to remand for further proceedings is within
the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172,
1175-1178 (9th Cir. 2000).  Where no useful purpose would be served by
further proceedings, or where the record has been fully developed, it
is appropriate to exercise this discretion to direct an immediate
award of benefits.  Harman, 211 F.3d at 1179 (decision whether to
remand for further proceedings turns upon their likely utility).
However, where there are outstanding issues that must be resolved

1  before a determination can be made, and it is not clear from the
2  record that the ALJ would be required to find the claimant disabled if
3  all the evidence were properly evaluated, remand is appropriate.  Id.
4  Here, as set out above with respect to Issues One and Two, outstanding
5  issues remain before a finding of disability can be made.
6  Accordingly, remand is appropriate.

7                         VI.  ORDERS

8       Accordingly, **IT IS ORDERED** that:

9       1.   The decision of the Commissioner is **REVERSED**.

10      2.   This action is **REMANDED** to defendant, pursuant to Sentence
11  Four of 42 U.S.C. § 405(g), for further proceedings as discussed
12  above.

13      3.   The Clerk of the Court shall serve this Decision and Order
14  and the Judgment herein on all parties or counsel.

16  DATED:  March 13, 2006

17                              _____/s/_____
18                              CARLA M. WOEHRLE
                                United States Magistrate Judge

11